**SO ORDERED.**

**SIGNED this 19th day of July, 2024.**



_Mitchell L. Herren_
Mitchell L. Herren
United States Bankruptcy Judge

---

**DESIGNATED FOR ONLINE PUBLICATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **IN RE:** | |
| **GLOBAL AVIATION TECHNOLOGIES LLC** | **Case No. 23-10111**<br>**Chapter 7** |
| **Debtor.** | |

**ORDER GRANTING SMALL BUSINESS ADMINISTRATION'S
MOTION FOR AN ORDER AUTHORIZING SETOFF OF
<u>EMPLOYEE RETENTION TAX CREDITS</u>**

In this converted chapter 7 case the Small Business Administration (SBA)

holds a secured claim in the amount of $2,099,422 resulting from an Economic

Injury Disaster Loan (EIDL) it made to debtor Global Aviation Technologies LLC

(GAT). GAT claims it is entitled to $201,630 in federal refundable Employee

Retention Tax Credits (ERTCs) for years 2019-2021 pursuant to the 2020 CARES

1

Act.[1] GAT purported to make a post-petition assignment of the ERTCs, which it had not previously disclosed in this bankruptcy, to its bankruptcy counsel as payment for fees and expenses incurred while GAT was in chapter 11. This attempted assignment occurred only days before conversion of the case to chapter 7. The SBA seeks Court authorization to exercise setoff of any ERTCs due to GAT against the debt GAT owes to the SBA arising from the EIDL. GAT's former chapter 11 legal counsel filed a response and supplemental response opposing the requested setoff. The chapter 7 trustee supports the SBA's setoff request. For the reasons discussed below, the SBA's Motion[2] is granted.

I.     Factual Background

Highly summarized, an ERTC is a refundable employment tax credit that incentivized businesses to retain and continue paying employees during the COVID pandemic when businesses were shutting down due to government order or experiencing significant decline in business revenue. Employers who satisfy the eligibility requirements complete an amended quarterly payroll tax return to calculate and apply the tax credit, or offset, against the employer's share of certain payroll taxes. If the tax credit exceeds the amount of the employer's share of the payroll taxes owed for a given quarter, the excess (overpayment) is refunded, or

---

[1] The ERTCs were aimed at assisting small businesses during COVID and were a product of the 2020 CARES Act. The 2020 CARES Act (Coronavirus Aid, Relief, and Economic Security Act) was enacted in March 2020, Pub. L. 116-136, and as relevant here—§ 2301(b)(3) requires the government to treat an excess ERTC as an overpayment that shall be refunded under I.R.C. §§ 6402(a) and 6413(b) to the employer. *See* 26 U.S.C. § 3134.
[2] Doc. 296.  By agreement of the parties, the Motion was submitted on undisputed facts and extensive briefing by the parties. *See* Docs. 306, 307, 311, 322, and 328.

**2**

paid, to the employer. Eligibility for ERTCs for most businesses ended September 30, 2021.

In this case, it is undisputed that before filing bankruptcy GAT filed an application, or claim, with the Internal Revenue Service for an ERTC refund as a result of overpayment of its share of payroll taxes in the estimated amount of $201,630.[3] It is also undisputed that, to date, there has been no determination by the IRS on GAT's eligibility, nor the claimed overpayment or ERTC refund. The application remains pending.

GAT is indebted to the SBA on a prepetition EIDL loan made in 2020, and twice modified in 2021 to increase the principal loan amount to $2,000,000, secured by all of GAT's tangible and intangible personal property. The SBA is GAT's second largest secured creditor with a claim of approximately $2,099,422.

A. The Chapter 11 Proceedings

GAT filed this case on February 20, 2023, as a chapter 11 reorganization and operated the business as debtor-in-possession. GAT did not disclose the ERTCs, the overpayment of payroll taxes, or claimed refund as an asset in its bankruptcy schedules; nor did it disclose its claim against the United States for overpayment and refund of ERTCs.

The Court approved GAT's employment of Hinkle Law ("Hinkle") as its bankruptcy counsel. Prior to filing, Hinkle received an $8,000 general retainer from

---

[3] GAT has not provided to the Court the "application" or paperwork substantiating the claim for the ERTC refund, nor did it provide the date it was submitted or filed with the IRS, other than to represent it occurred before filing for bankruptcy relief.

GAT for services to be rendered in the chapter 11 case. Among GAT's "First Day Motions," it filed a motion for monthly payment of fees and expenses to Hinkle, pending approval of interim or final fee applications, as permitted by local rule of the bankruptcy court.[4] The motion was granted on March 16, 2023.[5]

GAT also filed a motion to use cash collateral to fund its continued operations.[6] GAT represented in the motion that it was indebted to the SBA under the EIDL loan and that the SBA (and Conway Bank) had an interest in the cash collateral, described as GAT's "inventory, account receivables, and all funds held in any of [its] prepetition bank accounts . . . and all cash and cash equivalents" acquired by GAT post-petition as "proceeds of pre-petition collateral."[7] GAT further requested carve-outs of Conway Bank's and the SBA's cash collateral to provide for the payment of certain administrative expenses of the case.[8]

The Court granted the motion on an interim basis and subsequently granted use of cash collateral on a final basis.[9] The provision for carve-outs is identical in both orders, and as relevant here, provides:

> g.     Carve Out. "Carve Out" means the following amounts:
> . . .
> 2)     pursuant to Section 726(b) of the Bankruptcy Code, claims allowed by a final order of the Bankruptcy Court under Section 503(b) of the Bankruptcy Code *that are incurred after the conversion of the Chapter 11 case to a case under Chapter 7* of the Bankruptcy Code in an amount not to exceed $25,000.00;

---

[4] Doc. 7. *See* D. Kan. LBR 2016.1 (Monthly compensation of professionals).
[5] Doc. 65.
[6] Doc. 14.
[7] *Id.* at 5-6.
[8] *Id.* at 2.
[9] Doc. 44 (First Interim Order); Doc. 61 (Final Order).

4

3)     the allowed and *paid professional fees and disbursements incurred by GAT* in attorney fees in an amount not to exceed $100,000.00; . . .[10]

Nowhere in the cash collateral motion, or the interim and final orders granting use of cash collateral were the ERTCs, their overpayment or refund, mentioned or valued.

During the proceedings in chapter 11, GAT did not utilize cash collateral to make any of the authorized monthly payments to Hinkle for its fees and expenses as the Court had allowed.[11] Hinkle did file two fee applications: (1) First Interim Fee Application as Administrative Expense, filed August 25, 2023, for the period February 20, 2023 to June 30, 2023, in the amount of $52,755.26;[12] and (2) Final Fee Application as Administrative Expense, filed March 19, 2024, for the period July 1, 2023 to November 20, 2023, for work performed during the chapter 11 case in the amount of $77,247.74.[13] The total allowed amount of Hinkle's chapter 11 administrative expense claim is $127,270.43.[14] That amount remains unpaid.

B.  Conversion to Chapter 7

On September 28, 2023, the United States Trustee filed a motion to dismiss or convert the case for cause under § 1112(b), including "substantial loss to or

---

[10] Doc. 61 at 13-14.

[11] In the Interim application, Hinkle represented that it had received no payments from GAT as permitted by the Court's order allowing monthly payments. Doc. 171 at 3.

[12] Doc. 171. The Interim Fee Application was approved on September 26, 2023. Doc. 194.

[13] Doc. 318. Hinkle states that it applied the remaining balance of GAT's $8,000 prepetition retainer in the amount of $561.57 to the Interim Fee Application in September of 2023, leaving an unpaid balance from the Interim Fee Application in the amount of $52,193.69. Doc. 318 at 3. The Final Fee Application was approved in the amount of $75,076.74 after agreed resolution of two limited objections by a creditor and the Chapter 7 trustee. *See* Doc. 334.

[14] Allowed and unpaid Interim Fees and Expenses ($52,193.69) + Allowed and unpaid Final Fees and Expenses ($75,076.74) = $127,270.43.

**5**

diminution of the estate with no reasonable likelihood of rehabilitation, failure to file reports, failure to insure against losses, and failure to confirm a plan within a reasonable time."[15] The UST sought an expedited hearing on its motion. A hearing was scheduled but was continued to allow time for GAT to attempt to obtain insurance. The motion was reset for an evidentiary hearing on November 20. Prior to that hearing, GAT ceased operations and the parties entered into an agreed order filed on November 20, 2023, converting the case to chapter 7.[16] At the time of conversion, GAT had not filed a proposed plan of reorganization and was on its third extension of the exclusivity periods.[17]

On December 13, 2023, Hinkle moved to withdraw as bankruptcy counsel due to GAT's nonpayment of Hinkle's fees and expenses.[18] An order granting Hinkle's motion to withdraw was entered December 28, 2023.[19]

On January 17, 2024, the SBA filed a motion for an order authorizing setoff of the ERTCs under § 553 of the Bankruptcy Code.[20]

### C.  GAT's Post-Petition Assignment of the ERTCs

On the same day as conversion of the case, November 20, 2023, GAT filed a motion to approve a post-petition assignment of the previously undisclosed ERTCs to Hinkle.[21] The motion stated that GAT's payroll services provider applied for ERTCs for tax years 2019-2021 on behalf of GAT in the amount of $201,630. The

---

[15] Doc. 196. *See* 11 U.S.C. § 1112(b)(4)(A), (C), (F), an (J).
[16] Doc. 266.
[17] Doc. 249.
[18] Doc. 284.
[19] Doc. 289.
[20] Doc. 296.
[21] Doc. 264.

**6**

assignment was attached to the motion.[22] It was signed by GAT's Director of

Finance/Manager, and dated November 16, 2023, just a few days before conversion

of the case. The assignment stated:

> FOR AND IN CONSIDERATION of legal services rendered and to be rendered in connection with bankruptcy proceedings and *consistent with the Final Order Authorizing [GAT's] Use of Cash Collateral and Granting Adequate Protection entered on March 15, 2023*, the undersigned hereby *assigns and transfers* to HINKLE LAW FIRM LLC *the Debtor's entire interest in and to any claims which the Debtor has or may have of state and federal [ERTCs]* for the taxable years ending December 31, 2019, December 31, 2020, and December 31, 2021 until all attorney fees and expenses due assignee are paid in full. The undersigned represents that the Debtor believes it will be entitled to these credits, the proper paperwork for the credits has already been filed, and that *Debtor will deliver to the assignee any credit and/or refund checks associated with the [ERTCs] which may be received* for the above taxable year(s).[23]

GAT asserted the post-petition assignment was an ordinary-course

transaction that was permitted under 11 U.S.C. § 363(c)(1) without notice or

hearing, or alternatively, under § 363(b)(1) after notice and hearing, and court

approval. After conversion of the case, the chapter 7 trustee withdrew GAT's motion

for approval of assignment of the ERTCs.[24]

II.  Analysis

Before addressing the substantive legal issues presented by the SBA's

motion, the Court first addresses a matter that none of the parties raised. Relief

from the bankruptcy automatic stay arguably must be obtained before exercising

---

[22] Doc. 264, Ex. 1 at 9-10.
[23] *Id*. at 9. Emphasis added.
[24] Doc. 293.

**7**

setoff rights postpetition.[25] In this case, the SBA's motion is titled as a motion for an order authorizing the SBA to exercise setoff rights. Although the motion does not specifically request stay relief under § 362(d), the Court will construe the SBA's motion as one that includes relief from the automatic stay for cause to exercise setoff. All interested parties have proceeded as if stay relief is implicit in the setoff request. The chapter 7 trustee is not opposed to the SBA's exercise of setoff[26] and had previously withdrawn GAT's motion for approval of assignment of the ERTC refund to Hinkle. Interested party Hinkle has appeared and presented its arguments in opposition to the SBA's setoff. Whether cause exists to lift the stay would depend on many of the same factual and legal considerations dictating whether the SBA's setoff request should be granted. In short, no interested party would be prejudiced by this Court construing the SBA's motion as one that implicitly includes stay relief, if required, in order to exercise setoff.

The Court now turns to the substantive legal issues presented by the SBA's motion. As noted previously, the CARES Act provides for a refund of excess ERTCs, or "overpayment."[27]  Section 2301(b)(3)(A) addresses the overpayment and refund as follows:

---

[25] *See* 11 U.S.C. § 362(a)(7) (setoff of any debt owing to the debtor that arose prepetition is subject to the automatic stay); *In re Wood,* 993 F.3d 245 (4th Cir. 2021) (government should not have exercised setoff against chapter 7 debtors' federal income tax refund postpetition without first moving for relief from the automatic stay, but granting government's motion for annulment of the automatic stay to validate the setoff); *In re Collum,* 604 B.R. 61 (Bankr. M.D. Ala. 2019) (to exercise a valid right of setoff in bankruptcy under § 553, creditor is first required to move for relief from automatic stay, citing § 362(a)(7)); *In re Gould,* 401 B.R. 415 (9th Cir. BAP 2009) (IRS's right to setoff constituted cause for lifting stay to permit setoff to proceed). *But see* 11 U.S.C. § 362(b)(26) (excepting from the automatic stay, setoff of an *income tax refund* by a governmental unit).
[26] *See* Doc. 307 at 10, ¶ 25.
[27] Section 2301 of the CARES Act is incorporated in the Internal Revenue Code at 26 U.S.C. § 3134.

8

IN GENERAL. If the amount of the credit under subsection (a) exceeds the limitation of paragraph (2) for any calendar quarter, such excess shall be treated as an overpayment that shall be refunded under sections 6402(a) and 6413(b) of the Internal Revenue Code of 1986.

The referenced IRC § 6402(a) provides:

In the case of any overpayment, the Secretary, within the applicable period of limitations, *may credit the amount of such overpayment,* including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment, *and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person.*[28]

Subsection (d)(1) authorizes and *requires* the Secretary to reduce the amount of any overpayment by a past-due legally enforceable debt (other than a past-due support obligation) owing to any Federal agency, pay the amount by which the overpayment is reduced to the agency, and notify the taxpayer of the reduction of the overpayment. By operation of IRC § 6402(d)(1), the ERTC overpayment is credited against the outstanding, non-support debt owed to the federal agency, here the SBA, and the balance, if any, is then refunded to the employer GAT. IRC § 6402 statutorily mandates the setoff of GAT's ERTC overpayment against GAT's obligation to the SBA before any "refund" may be realized.

In this case Hinkle contends that its interest in the excess ERTCs or refund, by virtue of GAT's post-petition assignment and cash collateral order, is superior to the SBA's rights of setoff. As further explained below, the Court disagrees.

---

[28] 26 U.S.C. § 6402(a). Emphasis added.

A. SBA's Rights of Setoff

The SBA initially filed its motion for authorization to set off GAT's claim for the excess ERTCs pursuant to § 553(a) of the Bankruptcy Code. A setoff involves an intent to permanently apply or cancel one debt against another.[29] Section 553 preserves in bankruptcy the right of setoff recognized at common law and non-bankruptcy law.[30] It "is based on the common sense notion that 'a man should not be compelled to pay one moment what he will be entitled to recover back the next.'"[31] The right of setoff has also been characterized as "inherent in the federal government."[32] The exercise of setoff under § 553 is permissive and discretionary.[33]

Setoff under § 553 in this case requires the presence of mutual prepetition debts and claims between the United States and GAT.[34] Three elements must be met: (1) the United States owes a debt to the debtor that arose prepetition; (2) the United States has a claim against the debtor that arose prepetition; and (3) the creditor's and debtor's obligations must be mutual – both the debt and claim arose prepetition.

As applied here, GAT is indebted to the SBA under the prepetition EIDL. The SBA's secured claim on the date of the petition is in excess of $2.099 million. The

---

[29] *See Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16 (1995) (distinguishing an administrative freeze of bank funds).

[30] *In re Commercial Financial Services, Inc.,* 2002 WL 1753192, at *2 (10th Cir. July 30, 2002) (citing *Citizens Bank of Maryland*, 516 U.S. at 18*); United States v. Myers (In re Myers),* 362 F.3d 667, 672 (10th Cir. 2004). *See also In re Wood,* 993 F. 3d 245, 250-51 (4th Cir. 2021) (noting that IRC § 6402(d) is an *imperative* statutory setoff right preserved in bankruptcy by § 553).

[31] *In re Wood,* 993 F.3d 245, 250 (citing *In re Davis,* 889 F.2d 658, 661 n.5 (5th Cir. 1989) and quoting William H. Lloyd, *The Development of Setoff,* 64 U. Pa. L. Rev. 541, 541 (1916)).

[32] *Id.*

[33] *In re Myers,* 362 F.3d 667, 672.

[34] *Id.*

**10**

IRS owes GAT for any ERTC overpayment for prepetition tax years in the estimated amount of $201,630.[35] As defined by § 101(12) of the Bankruptcy Code, the ERTC overpayment is a "debt" of the IRS as a "liability on a claim." A "claim" is defined as a "right to payment," whether the claim is liquidated, fixed, or contingent.[36]

These mutual, prepetition debts satisfy the requirements for setoff under § 553. As the SBA correctly points out, the United States and its agencies are considered one creditor.[37] Thus, it is irrelevant that GAT's debt is due to the SBA while the United States' debt due GAT is that of the IRS. The effect of setoff under these facts is that once the amount of any overpayment is determined, the excess ERTCs are swallowed by the SBA's claim and no refund will be due to GAT.

In addition, the SBA cites to Bankruptcy Code § 106(c) for a statutory right of setoff where governmental units are involved. Section 106(c) states: "Notwithstanding any assertion of sovereign immunity by a governmental unit, there *shall* be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate." (Emphasis added). The SBA's claim against GAT on the EIDL loan and GAT's claim for overpayment and refund of excess ERTCs against the IRS are such claims of governmental units. GAT's claim for refund of excess ERTCs for prepetition tax years 2019-2021 is

---

[35] *See* CARES Act, § 2301(b)(3) and I.R.C., § of the CARES Act
[36] *See* 11 U.S.C. § 101(4)(A).
[37] *Turner v. Small Business Admin. (In re Turner),* 84 F.3d 1294, 1296 (10th Cir. 1996) (noting unitary creditors may effect interagency setoffs).

**11**

property of the estate.[38]  Section 106(c) has the effect of waiving the government's

sovereign immunity in the context of bankruptcy proceedings for the limited

purpose of setoff of claims.[39]

A leading bankruptcy treatise has distinguished this mandatory statutory

right of setoff from setoff under § 553. *Collier's* treatise states:

> Unlike section 553, section 106(c) does not require that the offsetting
> obligations be "mutual." Nor does section 106(c) require that the
> offsetting obligations both be prepetition in nature. Instead, section
> 106(c) requires only that the claim to be offset against a governmental
> unit's claim must be property of the estate. In addition, setoff under
> section 106(c) is mandatory and the section itself creates a right of setoff,
> whereas section 553 merely preserves rights of setoff that otherwise
> exist under applicable nonbankruptcy law.[40]

In summary, SBA's right of setoff of GAT's claim for overpayment of excess

ERTCs, satisfies both § 553 and § 106(c) of the Bankruptcy Code as well as § 6402 of

the Internal Revenue Code.

### B.  The Cash Collateral Order and Carve Out

Hinkle asserts that it is entitled to the ERTCs as part of the cash collateral

order and carve out for payment of administrative expenses contained therein. The

Court disagrees.

The Court's review of the docket indicates that GAT did not list the

prepetition ERTCs, the overpayment, or claimed refund of ERTCs as an asset or

---

[38] *See Sorenson v. Secretary of Treasury,* 475 U.S. 851, 863 (1986) (holding that excess earned income tax credits "payable" to an individual, are payable as if it were a refund of tax paid and in which the individual had a property interest); *In re Richardson,* 216 B.R. 206 (Bankr. S.D. Ohio 1997) (concluding in analogous setting of earned income tax credits, that claim for refund may be property of the estate and validly assigned and pledged as security for a loan, as a general intangible).
[39] *See In re Supreme Beef Processors, Inc.,* 468 F.3d 248, 253-57 (5th Cir. 2006) (analyzing § 106(c)).
[40] 5 COLLIER ON BANKRUPTCY ¶ 553.03 (16th ed.).

**12**

cash equivalents in its chapter 11 schedules and statements.[41] Nor did GAT disclose its prepetition claim for a refund of ERTCs against the IRS.

The ERTCs, overpayment, and potential refund were not part of authorized cash collateral usage. Neither GAT's cash collateral motion, nor the interim or final cash collateral orders make any mention of the ERTCs, the overpayment, or their potential refund. The "cash collateral" was defined as "inventory, account receivables, and all funds held in any of [its] prepetition bank accounts" and all cash and cash equivalents acquired post-petition as proceeds from such pre-petition collateral.[42] The ERTCs are none of these.[43]

Even if the ERTCs had been part of cash collateral, the carve out authorizing payment of certain administrative expenses from cash collateral during the chapter 11 proceedings was limited to $100,000 for "allowed *and paid* professional fees and *disbursements* incurred by GAT in attorney fees."[44] Despite obtaining Court authorization for monthly compensation and the carve out for administrative expenses while in chapter 11, Hinkle never submitted its monthly itemized statements of fees and expenses and GAT never paid Hinkle for fees and expenses from cash collateral, or any other source other than its prepetition retainer.[45]

---

[41] *See* Doc. 55.
[42] Doc. 14 at 5-6; Doc. 61 at 5.
[43] GAT's claim for an ERTC refund is more likely a general intangible, which clearly was not included in the defined cash collateral. *See In re Richardson,* 216 B.R. at 219 (determining that the right to receive the proceeds from a check the debtor received from the IRS representing an earned income tax credit refund was a general intangible).
[44] Doc. 61, at 13, ¶ g.3.(Emphasis added).
[45] The Court notes that under the local rule authorizing monthly compensation for debtor's attorneys and other professionals, the procedure or practice is for the debtor's attorney to file a notice with the monthly itemized statement of attorney's fees and expenses serving the debtor, the UST, all secured

**13**

Moreover, under the terms of the carve out, allowed claims for administrative expenses under § 503(b) incurred *after conversion* of the case from Chapter 11 to Chapter 7 are limited to $25,000.[46] In reviewing Hinkle's final fee application filed in March of 2024, the only fees incurred after November 20, the date of conversion, were attorney fees between November 21-30 totaling $330 and December fees and expenses totaling $1,399.53.[47] But Hinkle did not seek allowance of these post-conversion fees and expenses in its final fee application.[48]

In sum, the ERTCs were not cash collateral that was authorized to be used for the administrative expense carve out. Hinkle is left with an allowed administrative expense claim of $127,270.43 for fees and expenses incurred during the chapter 11 case. Upon conversion to chapter 7 that claim is subordinated to administrative expenses incurred in the chapter 7 proceedings after conversion, pursuant to Bankruptcy Code § 726(b).

Finally, the SBA did not waive its setoff rights against the ERTC overpayment by consenting to the cash collateral order. A waiver requires the intentional relinquishment of a known right.[49] As noted previously, nothing in the cash collateral motion or orders indicated that the ERTCs, overpayment, or refund,

---

creditors, all parties requesting notice under Rule 2002(g), the creditors' committee, and the 20 largest unsecured creditors, if no creditors' committee exists. *See* Judge Herren's Guidelines, *Employment and Compensation of Professionals* at https://www.ksb.uscourts.gov/judges-info/herren.

[46] Doc. 61 at 13, ¶ g.2.

[47] Doc. 318-1. The order granting Hinkle's motion to withdraw as counsel for GAT was entered December 28, 2023. Doc. 289.

[48] Doc. 318 at 2.

[49] *In re Tornado Pizza, LLC,* 431 B.R. 503, 517 (Bankr. D. Kan. 2010); *In re Calore Exp. Co., Inc.,* 288 F.3d 22, 40 (1st Cir. 2002) (Government's acquiescence in debtor's motion to borrow against its accounts receivable (including a receivable due from the United States) did not waive government's right to setoff).

were included in cash collateral. The carve out authorized the use of SBA's cash

collateral to pay GAT's attorney fees and expenses; it did not authorize use of

ERTCs.  Nothing in the cash collateral order eliminated or extinguished any setoff

rights that the SBA may have with respect to the ERTCs. Absent specific mention

and disclosure of the ERTC overpayment or refund as cash collateral in the motion

or orders, and without any reference whatsoever to setoff in the cash collateral

order, SBA has not waived any setoff rights it may have.

C.  GAT's assignment of the ERTC refund to Hinkle

GAT's attempted post-petition assignment of the ERTC refund to Hinkle for

fees and expenses is not a transaction in the ordinary course of GAT's business;

thus, it requires court approval.  The Bankruptcy Code does not define "ordinary

course of business."[50] Applying the horizontal and vertical dimension tests for

determining ordinary course transactions under § 363, GAT's post-petition

assignment to Hinkle fails these tests.[51] The horizontal test considers whether the

transaction is of a kind commonly undertaken in debtor's industry.[52] Here, debtor

held Federal Aviation Administration certifications and specialized in aircraft

---

[50] *In re Git-N-Go, Inc.,* 322 B.R. 164, 171 (Bankr. N.D. Okla. 2004).

[51] *See In re Git-N-Go, Inc.,* 322 B.R. at 172 (applying horizontal and vertical tests); *Morris v. Dooley* (*In re Dooley's Rainwater Conditioning, Inc.),* 2013 WL 121657, at *1 (Bankr. D. Kan. Jan. 8, 2013) (same); *Morris v. Family Motors, Inc. (In re Dooley's Rainwater Conditioning, Inc.),* 2012 WL 6737501, at *4 (Bankr. D. Kan. Dec. 27, 2012) (noting that neither the Tenth Circuit, nor Tenth Circuit BAP have specifically adopted the horizontal and vertical tests for determining whether a transaction is in the ordinary course of business).

[52] *In re Git-N-Go, Inc.,* 322 B.R. 164, 172. *See In re Dooley's Rainwater Conditioning, Inc.,* 2013 WL 121657, at *2-*3 (on summary judgment, court expressing skepticism regarding post-petition cash advance to brother of debtor's principal who used personal credit card to make online business purchases for debtor as a transaction similar to one in which similar businesses would ordinarily engage).

**15**

upgrades and system modification, was an FAA certified repair station, and manufactured aircraft parts, cable assemblies, and electrical sub-assemblies. The vertical test considers whether a hypothetical creditor doing business with debtor would, in determining to advance credit, anticipate that debtor would make transfers of this type.[53]

The sequence of events in this case demonstrates the attempted assignment was an effort to shore up payment of Hinkle's attorney fees after-the-fact. It was not made in the course of continuing GAT's business operations or reorganizing its business and financial affairs. By the time GAT assigned the ERTCs to Hinkle, GAT had ceased its business operations and ended its efforts to reorganize. The same day that GAT agreed to convert its case to chapter 7, GAT moved for authorization to assign the ERTC refund to its bankruptcy counsel. There was no longer any prospect of GAT's reorganization in chapter 11 and after conversion, the chapter 7 trustee withdrew the motion for authorization of the post-petition assignment of the ERTC refund. GAT's assignment of the ERTC refund to Hinkle was outside the ordinary course of business.[54]

---

[53] *In re Git-N-Go, Inc.,* 322 B.R. 164, 172-73 (noting that under the vertical test the inquiry is whether the transaction subjects a hypothetical creditor to economic risk different from the risk the hypothetical creditor accepted when it extended credit).

[54] *See In re Century Brass Products, Inc.,* 107 B.R. 8 (Bankr. D. Conn. 1989) (severance-pay agreement with debtor's former officer was not in ordinary course of business; noting the touchstone of "ordinariness" is the creditors' reasonable expectations of what transactions the debtor is likely to enter in the course of its business); *In re Thornton & Co.,* 2015 WL 5795884 (Bankr. D. Conn. Oct. 2, 2015) (debtor no longer operating in ordinary course where substantial portion of debtor's business had ceased and debtor intended to liquidate substantially all of its assets); *In re Keystone Surplus Metals Inc.,* 445 B.R. 483 (Bankr. E.D. Pa. 2010) (alleged post-petition unsecured loans by debtor's president were not in ordinary course where loans were not mentioned in operating reports, disclosure statement or chapter 11 plan). One bankruptcy court has held in a converted chapter 7 case, that post-petition payments to professionals are outside the ordinary course of a debtor-in-

Even if the post-petition assignment of the ERTC refund claim against the IRS was an ordinary course transaction, GAT's assignment does not comply with the Assignment of Claims Act,[55] 31 U.S.C. § 3727(b), in several respects. First, the assignment may be made only *after* a claim is allowed and the amount of the claim is decided.  At the time of the assignment dated November 16, 2023, the IRS had not determined the amount of the ERTC refund, if any, because it had not exercised its statutory right of setoff of the ERTC overpayment under IRC § 6402(d), had not allowed the claim for a refund, and had not issued a warrant for payment of the refund.[56]  Second, GAT did not acknowledge the assignment before a notary public or other official and the official did not certify the assignment. Third, the assignment did not specify the warrant for payment and was not attested to by two witnesses.  While these failures may not affect the validity of the assignment as between GAT and Hinkle, the assignment is not effective as to the United States (*i.e.* the SBA or the IRS).[57]  Thus, the SBA's right of setoff prevails over Hinkle's rights as assignee of the ERTC refund claim.

---

possession's financial affairs. *In re Pannebaker Custom Cabinet Corp.,* 198 B.R. 453, 464 (Bankr. M.D. Pa. 1996) (citing *In re Addison Properties Ltd.,*  185 B.R. 766, 769 (Bankr. N.D. Ill. 1995)).

[55] The Act is commonly referred to as the Anti-Assignment Act, which consists of two statutory acts that contain specific requirements or conditions for a valid assignment – 31 U.S.C. § 3727 (assignment of claims against the United States government) and 41 U.S.C. § 15 (assignment of government contracts). *See generally Oxy USA Inc. v. United States,* 163 Fed. Cl. 75, 88 (2023).

[56] *See USDA Rural Hous. Serv. v. Riley,* 485 B.R. 361, 365 (W.D. Ky. 2012) (stating that a "refund" is the amount the IRS is obligated to pay the taxpayer *after* the IRS has exercised its right to offset pursuant to IRC § 6402); *In re Shortt,* 277 B.R. 683, 688 (Bankr. N.D. Tex. 2002) (concluding that there is no actual refund to be paid where there are no monies owing after offset); *In re Luongo,* 259 F.3d 323, 336 (5th Cir. 2001) (where prior unpaid tax liability exceeds the amount of the overpayment, debtor is not entitled to a refund).

[57] *See In re Richardson,* 216 B.R. 206, 213-14 (Bankr. S.D. Ohio 1997) (debtor's assignment of claim against the IRS for an earned income tax credit refund did not comply with § 3727(b) and was invalid as to the United States); *Atlas Hotels, Inc. v United States,* 140 F. 3d 1245 (9th Cir. 1998)

**17**

III.    Conclusion

The SBA's motion for an order authorizing setoff of GAT's overpayment of Employee Retention Tax Credits is GRANTED and, to the extent it is necessary, the SBA is granted relief from the automatic stay for cause, for the purpose of exercising setoff of GAT's overpayment under § 6402(d) of the Internal Revenue Code.

# # #

---

(payroll tax services company did not validly assign refund claim to taxpayers during its bankruptcy where at time of assignment the refund claim was not allowed, amount of claim was not decided, and warrant for payment was not issued; assignment was void against the United States); *Jung v. United States,* 701 F. Supp. 175 (E.D. Wis. 1988) (Government not bound by taxpayers' assignment of potential recovery in tax refund suit to their attorney before offsetting other tax liabilities where assignment was not made after claim was allowed and amount determined, and was not acknowledged, witnessed or certified and therefore ineffective).

**18**